MEMORANDUM *
William F. McCray appeals the district court’s denial of his 28 U.S.C. § 2255 motion to vacate his convictions for promotional money laundering. We have jurisdiction under 28 U.S.C. § 2253(a), and we reverse.
1. The district court erred in concluding that McCray’s promotional money laundering counts, counts 23 and 24 of the Indictment, did not merge with his wire fraud counts, counts 16 and 17. The core of McCray’s fraudulent scheme was to churn the funds in his investors’ accounts to drive up commissions. Unlike a traditional Ponzi scheme, McCray actually used investor capital to trade foreign currency from which he profited by receiving commissions. His trading scheme was a fraud, however, because he misrepresented his returns. The $5.8 million wire transfers to *687 International Forex Limited’s account at the Bank of Bermuda (hereafter the “Bermuda Transfers”) were a “central component of the scheme to defraud.” United States v. Van Alstyne, 584 F.3d 803, 815 (9th Cir.2009). Indeed, after the $5.8 million was transferred to the Bank of Bermuda, subsequent trading in that account generated commissions of over $640,000. As in Van Alstyne, where distribution checks sent directly to investors were crucial to the “very nature of the scheme,” id. at 815, transfers of investor capital to foreign currency exchange trading desks for the purpose of executing trades and generating commissions were at the heart of McCray’s scheme.
Furthermore, the Bermuda Transfers were “central to carrying out the scheme’s objective of encouraging further investment” and perpetuating the scheme’s continued viability. United States v. Moreland, 622 F.3d 1147, 1166 (9th Cir.2010); see also United States v. Ali, 620 F.3d 1062, 1072 (9th Cir.2010) (holding that there was a “merger” problem because “an illegal scheme to buy and sell discounted software will continue to buy and sell software to perpetuate the scheme”). For example, McCray specifically marketed the benefits of offshore accounts to attract further investment, and some investors even called the Bank of Bermuda to verify that McCray was trading there. Also, unlike in United States v. Bush, 626 F.3d 527, 538 (9th Cir.2010), where the defendant moved money offshore after government authorities began investing his scheme, McCray did not transfer funds offshore to hide them. Rather, he transferred the funds to Bermuda months before the search warrant was executed for use in his scheme. Although it is unclear what portion of the $5.8 million was used for trading — as opposed to refunds, commissions, or bank fees — the Bank of Bermuda was the most active trading desk in 1999, accounting for 54% of International Forex Limited’s commissions that year.
Even if a portion of the Bermuda Transfers was used in a way that did not implicate the “merger” problem, the transfers themselves would remain a “central component of the scheme” because they provided the investor capital necessary to execute trades and generate commissions. See Moreland, 622 F.3d at 1165. Therefore, because the Bermuda Transfers were a “central component of the scheme to defraud,” McCray’s promotional money laundering counts trigger the “merger” problem and the “profits” definition of “proceeds” should apply. See Van Alstyne, 584 F.3d at 815-16 (discussing United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008)).
The promotional money laundering counts also led to “a radical increase in the statutory maximum sentence.” Bush, 626 F.3d at 538. While the statutory maximum for the underlying offense of wire fraud was five years, see 18 U.S.C. § 1343 (1999), the statutory maximum for promotional money laundering was twenty years, see 18 U.S.C. § 1956 (1999). Thus, as warned of by the Santos plurality, the money laundering counts “eviscerated” the statutory cap of the underlying offense. 553 U.S. at 527, 128 S.Ct. 2020 (Stevens, J., concurring).
Lastly, because the government did not show that the Bermuda Transfers involved profits from McCray’s scheme, his promotional money laundering convictions cannot stand. See Ali, 620 F.3d at 1072. Thus, the promotional money laundering “counts implicate the merger problem discussed in Van Alstyne and Santos and, because the government did not show that only profits were used, there is insufficient evidence to support [McCray’s] conviction *688 under the promotion[al] money laundering counts.” Id.
2. Even if McCray procedurally defaulted on his Scmtos-based claim, because his claim succeeds on the merits, his default' is excused because he has demonstrated “actual innocence.” See United States v. Avery, 719 F.3d 1080, 1085 (9th Cir.2013) (“A petitioner is actually innocent when he was convicted for conduct not prohibited by law.”) (internal quotation marks omitted). Because the Bermuda Transfers were client capital, and not profits of the scheme, “it is more likely than not that no reasonable juror would have found [McCray] guilty beyond a reasonable doubt.” Id. at 1083 (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). In light of all the evidence, no reasonable juror would have been able to conclude beyond a reasonable doubt that McCray knowingly used the profits from his scheme in the Bermuda Transfers. See, e.g., Avery, 719 F.3d at 1085 (holding that defendant’s procedural default was excused because he was actually innocent of honest services fraud in light of Skilling v. United States, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010)).
2. Accordingly, we REVERSE the denial of McCray’s § 2255 motion, VACATE his convictions on counts 23 and 24 of the Indictment, and REMAND for resentenc-ing in accordance with this disposition.
REVERSED, VACATED, and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.